CLERK'S OFFICE
A TRUE COPY
Jul 16, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with the Enterprise Rent-A-Car Company of Wisconsin, LLC account blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, (the "Target Telematics Account"), as further described in Attachment A.

Case No. 25-M-458 (SCD)
Matter No. 2024R438

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______ District of ______ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7-30-25 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Stephen C. Dries.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ______.

Date and time issued: 7-16-25. 10:15 am

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

Information associated with the **Enterprise Rent-A-Car Company of Wisconsin, LLC** account blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, (the "Target Telematics Account"), that is stored at premises controlled by **Enterprise Rent-A-Car Company of Wisconsin, LLC**, which is headquartered at Enterprise Mobility, 600 Corporate Park Drive, St. Louis, MO 63105.

## ATTACHMENT B
**Particular Things to be Seized**

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of **Enterprise Rent-A-Car Company of Wisconsin, LLC**, regardless of whether such information is located within or outside of the United States, and including any such information that has been deleted but is still available to **Enterprise Rent-A-Car Company of Wisconsin, LLC**, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **Enterprise Rent-A-Car Company of Wisconsin, LLC** is required to disclose the following information to the government for the Target Telematics Account from **May 28, 2025 through June 27, 2025**:

a. All business records or other information, including subscriber information, in any form kept, pertaining to the Target Telematics Account, including the subscriber's full name, date of birth, address, shipping address, date account was opened, length of service, any mobile equipment identifier associated with the account, telephone numbers, and other identifiers associated with the Target Telematics Account;

b. All information in possession of **Enterprise Rent-A-Car Company of Wisconsin, LLC** that might identify the subscriber(s) associated with the Target Telematics Account or persons using the vehicle associated with the Target Telematics Account, including the times and dates such persons used the vehicle;

c. All billing records for the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

d. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), pertaining to the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

e. All records or other information indicating the types of services to which the account holder is subscribed from **May 28, 2025 through June 27, 2025**;

f. All records pertaining to communications (including contents of communications) between **Enterprise Rent-A-Car Company of Wisconsin, LLC** and any persons, regarding the Target Telematics Account, including contacts with support services and records of actions taken;

g. All incoming and outgoing telephone numbers associated with services provided through the Target Telematics Account, from **May 28, 2025 through June 27, 2025;**

h. All historical messages or communications, including voice mail, text, email, and multimedia messages from **May 28, 2025 through June 27, 2025** associated with the Target Telematics Account;

i. All historical location information associated with the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

j. All turn-by-turn navigation records associated with the Target Telematics Account from **May 28, 2025 through June 27, 2025**; and

k. All voice-to-text messaging logs, including date and time of messages, associated with the Target Telematics Account from **May 28, 2025 through June 27, 2025**;

The Provider is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. <u>Information to be seized by the government</u>

All information described above in Section I that constitutes fruits, evidence, contraband, and/or instrumentalities of violations of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances Title 21, United States Code, Sections 841 and 846, (Subject Offenses) have been committed by Russell V. MCDADE (DOB XX/XX/1980), Walter RINGERSMA (DOB XX/XX/1965) and other identified and unidentified subjects since December 2023 to present, including information pertaining to the following matters:

a. Evidence indicating how and when the Target Telematics Account was used, including to determine the chronology of account access and events relating to one or more of the Subject Offenses under investigation;

b. Evidence indicating the geographic location of the vehicle at times relevant to the investigation;

c. Evidence indicating the owner's/subscriber's state of mind as it relates to the Subject Offenses;

d. The identity of the person(s) who created or used the telematics system or services associated with the Target Telematics Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, contraband, and/or instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, United States Department of Homeland Security Investigations may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

CLERK'S OFFICE
A TRUE COPY
Jul 16, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with the Enterprise Rent-A-Car Company of Wisconsin, LLC account blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, (the "Target Telematics Account"), as further described in Attachment A.

Case No. 25-M-458 (SCD)

Matter No. 2024R438

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __________ District of __________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. 841 and 846 | Conspiracy to distribute and possess with the intent to distribute controlled substances<br>Distribution and possession with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

❒ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Curt R. Hansen
*Applicant's signature*

Curt Hansen, SA HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 7-16-25

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, United States Department of Homeland Security Investigations (HSI) Special Agent Curt Hansen, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant under 18 United States Code §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Enterprise Rent-A-Car Company of Wisconsin, LLC, the custodian of the an electronic communication service and/or remote computing service provider, to disclose to the government information associated with the telematics system installed in the blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, **(**the "Target Telematics Account"), and which is stored at premises controlled by **Enterprise Rent-A-Car Company of Wisconsin, LLC**. The information to be searched is described in the following paragraphs and in Attachment A.

2. I am a Special Agent of HSI, assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin. I have been employed with HSI as a Special Agent for approximately four years. Prior to employment with HSI, I worked as a Deputy United States Marshal, Federal Air Marshal, and United States Border Patrol Agent. I have been a sworn federal law enforcement officer specifically investigating crimes involving narcotics, firearms, smuggling, terrorism, and immigration since September 2011. Throughout my law enforcement career, I have received training in general law enforcement and in specialized areas including narcotics and human smuggling. I am an investigator or law enforcement officer of the United States within the meaning of Title 8, United States Code, Section 1357(a)(5), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, certain

offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code, and other related offenses. Since becoming employed as a federal agent, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. As part of my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes that involve narcotics violations pursuant to Title 21, United States Code.

3. As part of my duties as an HSI Special Agent, I have experience conducting criminal investigations involving narcotics, firearms, gangs, and human trafficking and have participated in the execution of search warrants in such investigations. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers. Through my training and experience, I am familiar with the way in which narcotic traffickers conduct their business, including, but not limited to: the types and amounts of drugs distributed; the types and amounts of profits made; the methods of importing and distributing controlled substances; the use of mobile telephones, email accounts, and the Internet to facilitate their transactions; and the use of numerical codes and code words to conduct their dealings.

4. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives; "stash houses" (i.e., houses used as drug/money storage locations); storage facilities; cellular/camera phones; and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized from the distribution and sale of controlled substances, and monetary instruments and various assets that were purchased with the

proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

5. Additionally, I have received training related to the investigations and enforcement of drug trafficking laws. As a result of this training and my experience, I am familiar with the technologies of drug traffickers. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations. I know drug traffickers often use electronic devices, such as cellular devices, to generate, transfer, count, record, or store the information described above and conduct drug trafficking. I am familiar with computers, cellular devices, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. I know that drug traffickers often keep documents and records about the transportation, sourcing, ordering, sale, and distribution of controlled substances. These documents and records and additionally receipts, notes, ledgers, and other documents regarding drug trafficking are often maintained where the traffickers have ready access. These may be stored computers, cellular devices, and other electronic media or electronic storage devices. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be

instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

6. I am familiar with the language used over the telephone and other electronic communications to discuss sex and drug trafficking and know that the language is often limited, guarded, and coded. I am familiar with various code names used to describe controlled substances, as well as various code words used to describe commercial sex acts. I also know that drug traffickers and sex traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes.

7. Further, based on training and experience, I am aware that it is a common practice within a drug trafficking organization to have various tasks assigned to persons involved in the organization. This may be done to attempt to evade law enforcement. The members of the organization may have certain tasks, dependent on their hierarchy within the organization. It is common for those in charge of the organization to use those below them to make deliveries, transport, rent vehicles, and hold/take possession of items, such as controlled substances and/or narcotics for distribution or firearms for protection/intimidation. The persons higher in the drug trafficking organization often avoid conducting the hand-to-hand transaction in order to insulate

themselves, to avoid apprehension/detection from law enforcement.

8. I have conducted investigations ranging from death, drug, property, and human trafficking crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and human trafficking investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics and who engage in the trafficking of others will mainly utilize their cell phone to set up a transaction utilizing their cellular phone or a special application downloaded on their phone. I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos. The same is true for those that engage in drug trafficking and human trafficking.

9. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of

criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

10. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

11. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

12. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances Title 21, United States Code, Sections 841 and 846, have been committed by Russell V. MCDADE (DOB XX/XX/1980), Walter RINGERSMA (DOB XX/XX/1965) and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. JURISDICTION

13. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## III. PROBABLE CAUSE

### A. Background and Drug Death Investigation

14. Since approximately May 2024, HSI, Drug Enforcement Agency (DEA),

Wisconsin Department of Justice – Department of Criminal Investigation (DCI), the West Allis Police Department (WAPD) and other local agencies have been investigating a drug trafficking organization (DTO) on the southside of Milwaukee, Wisconsin that distributes fentanyl and cocaine. The DTO has been connected to several overdose deaths and appears to be led by Russell V. MCDADE (DOB XX/XX/1980). As part of the investigation, case agents have reviewed numerous recorded jail calls between MCDADE, who has been identified by his voice, his name and other facts shared in the recordings consistent with MCDADE.

15. Case agents have identified numerous cellphone number used by MCDADE through the investigation. Case agents are aware, it if common for those engaged in drug trafficking to have multiple cellphones and to change cellphones often in order to evade law enforcement.

16. In March 2025, case agents were notified of a confidential source (CS-1) that was purchasing controlled substances from "Roro" using telephone number 414-595-2360, a previously used drug line of MCDADE. CS-1 made recorded calls to telephone number 414-595-2360 with the assistance of law enforcement to arrange the purchase of fentanyl from 1512 South 21st Street, Milwaukee, Wisconsin. Case agents reviewed these recorded calls and were able to recognize that the voice of "Roro" as MCDADE.

17. CS-1 has given information concerning individuals involved in illegal activities, which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS-1 is cooperating with law enforcement for consideration on pending criminal drug charges in Forest County. CS-1 has had past arrests or convictions for felony drug offenses, felony family support offenses, felony and misdemeanor

bodily harm offenses, resisting/obstruction, traffic offenses and noncriminal retail theft offenses. Further, during CS-1's cooperation, on May 30, 2025, CS-1 was re-arrested on drug offenses by State Patrol in Outagamie County. This drug conducted was not at the direction of law enforcement and contrary to CS-1 cooperation agreement.

**B. Controlled Buys**

18. Based on training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant, such as the CS-1, purchases drugs from a target at the direction of law enforcement. For the below outlined controlled buys, the operations were generally conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a CS was used, she/he was searched for contraband, weapons, and money before the operation. The CS was also wired with a concealed body recorder and/or a monitoring device. When the transaction was completed, the CS met cases agents at a pre-determined meet location and gave the purchased drugs and the recording/monitoring equipment to the case agents. The CS was again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. The information provided by a CS was confirmed on the recording/monitoring equipment. A sample of the suspected drugs was then field tested by the case agents for the presumptive presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. Further, often the calls to the target by the CS, which were consensually recorded calls, were done under the direction and control of case agents and/or made in the presence of case agents.

**a. Controlled Buy March 27, 2025**

22. On March 27, 2025, CS-1 called "Ro" at the telephone number 414-595-2360 to arrange the controlled buy of fentanyl at 1512 South 21st Street, Milwaukee, Wisconsin. Case

agents conducted surveillance and observed CS-1 arrive and enter the 1512 South 21st Street, Milwaukee, Wisconsin.

23. Once inside 1512 South 21st Street, Milwaukee, Wisconsin, CS-1 observed “Ro”. CS-1 later explained that he/she provided “Ro” (MCDADE) with the buy money and MCDADE provided CS-1 with the suspected fentanyl. CS-1 stated that “Ro” then exited the residence.

24. Case agents observed MCDADE and Walter RINGERSMA (DOB XX/XX/1965), who was identified from a Wisconsin DOT photo and from a drug arrest on March 19, 2025 (described in more detail below), exit 1512 South 21st Street, Milwaukee, Wisconsin. CS-1 also left the residence and met with case agents.

25. Case agents reviewed the audio/video recorder footage obtained by CS-1 and recorded surveillance during the controlled purchase. Case agents identified MCDADE’s voice as the person CS-1 identified as “Ro” and MCDADE’s voice was on the recording during the drug transaction with CS-1.[1]

26. The suspected fentanyl was brought back to the station where it was weighed, and field tested positive for fentanyl. The total weight was 4.03 grams.

27. CS-1 identified MCDADE as “Ro” using a booking photo.

**b. Controlled Buy May 20, 2025**

28. Following the controlled buy in March 2025, CS-1 indicated “Ro” (MCDADE) texted messaged CS-1 and stated there was a new drug line, 414-541-3794. CS-1 indicated it was not uncommon for “Ro” to change drug lines.

29. On May 20, 2025, case agents met with CS-1 and made recorded calls to the number 414-514-3794 for "Ro" to arrange the purchase of fentanyl from 1425 West Greenfield

[1] During the controlled buy the recording device was in CS-1 pocket, so the video did not actual capture the buy. However, the audio did capture the buy, which was consistent with the description provided by CS-1.

Avenue, Milwaukee, Wisconsin. Case agents reviewed these calls and was able to recognize that the voice of "Ro" is in fact MCDADE.

30. On May 20, 2025, case agents met with CS-1 in order to conduct a purchase of fentanyl from MCDADE.

31. Case agents searched the CS-1 and no money or contraband was found. CS-1 placed a recorded call to "Ro" at the phone number 414-514-3794, in the presence of case agents. During the phone call, the CS-1 spoke with a male subject CS-1 knows as "Ro". The CS-1 advised that they would meet "Ro" at 1425 West Greenfield Avenue, Milwaukee, Wisconsin. CS-1 was provided with pre-recorded police buy money in the amount of $450 and a hidden video/audio recorders for the transaction. Case agents followed CS-1 near the meet location. CS-1 made no stops and did not interact with anyone after being searched and before arriving at the meet location.

32. Prior to the controlled purchase, case agents positioned themselves in the area 1425 West Greenfield Avenue, Milwaukee, Wisconsin to conduct surveillance. Case agents observed CS-1 enter the residence. Case agents recognized MCDADE's voice on the hidden recording during the time of the transaction. Hidden video during the transaction captured a black male matching the physicals of MCDADE wearing a grey sweat shirt and his hands packaging the suspected fentanyl for the sale (this is no video capturing his face and speaking to CS-1. The video then captured the CS-1 then exited the residence with the suspected fentanyl, which was observed by case agents also. Case agents then observed CS-1 walk to his/her vehicle. CS-1 was then followed to a meet location. CS-1 did not make any contact with anyone after leaving 1425 West Greenfield Avenue and prior to meeting with case agents.

33. CS-1 stated he/she provided “Ro” with the pre-recorded buy money from the police and “Ro” provided him/her with the suspected fentanyl in return. CS-1 stated that “Ro” was the same individual that CS-1 purchased drugs from in the past.

34. CS-1 stated that while inside the residence there were numerous people present. CS-1 stated there were three males with pistols and extended magazine. CS-1 identified one of the males with a pistol as "Nephew", who he identified as Alberto L. Boffil (m/w, XX/XX/04) by Department of Transportation photo, a known associate to MCDADE from previous surveillance by case agents.

35. CS-1 identified "Ro" as MCDADE by a booking photo.

36. Case agents later reviewed the audio/video recorder footage obtained by CS-1 from the controlled purchase and identified “Ro” as the voice of MCDADE. Also, case agent heard on the hidden recording MCDADE make note of a Milwaukee Police Department (MPD) Squad car that passes through the alley running east and west behind 1425 West Greenfield Avenue. MCDADE calls for people inside the residence to conduct a perimeter of the area. MCDADE can also be heard, after providing the fentanyl to CS-1, asking CS-1 "Are you doing a controlled buy?"

37. The suspected fentanyl weighed 5.8 grams and tested positive for fentanyl.

**C. MPD Drug Trafficking Incident**

38. On March 19, 2025, MPD was called to Best Western Plus near the Airport in Milwaukee, Wisconsin. MPD recovered 2,310 grams of suspected cocaine in a hotel room. Officers determined the room was rented by Walter RINGERSMA, who was later arrested in the hotel bar and grill area. On RINGERSMA’s person was 1.27 grams of suspected cocaine. A

female, Laura Francis Knezic (DOB XX/XX/1981) was also arrested related to the cocaine seized in the hotel room.

39. Case agents reviewed jail calls from Amber Valadez's PIN at Taycheedah Correctional Institute from March 25, 2025 at 7:12 PM to telephone number 414-514-3794 (695974289_553878_03-25-2025_19-12-35_1-414-514-3794_8803). During the jail call Amber Valadez identifies herself to a male using telephone number 414-514-3794. In review of the jail call, case agents believe the male to be MCDADE based on the content of the jail call and review of numerous other jails calls to MCDADE. Further, case agents also located 11 previous jail calls from Valadez's PIN to telephone number 414-595-2360. Case agents reviewed all 11 recorded jail calls and confirmed that they are all the same female's voice and the voice of MCDADE. Valadez is referred to as "Sabina" throughout many of the calls.

40. During the March 25, 2025 jail call, MCDADE stated that he has lots going on. MCDADE stated that "Wally got caught with 2 books". Based on training and experience, case agents know that it is common for drug dealers to refer to kilograms of controlled substances as books. Case agents believe MCDADE's reference to two books means 2 kilograms of drugs. Further during the call MCDADE clarifies that he was caught with "2 kilos." Valadez asked how this happened and if this was a traffic stop. MCDADE said that he (Wally) was "at the hotel with some people I know." MCDADE said that he was "going to be reimbursed in another hour or so" by some people he knows. MCDADE added that he is good. Valadez then tried to convince MCDADE to work on investing in automobiles so that MCDADE does not get in trouble. Valadez called MCDADE "Ro" during this call and spoke about her sister coming to get money to put on her books.

41. Based on the March 19, 2025 arrest of RINGERSMA with over 2 kilograms of cocaine and MCDADE's statements made during the record jail call on March 25, 2025, case agents believe MCDADE was supposed to be receiving the 2 kilograms of cocaine; however, the police seized his drugs.

### D. MCDADE and S2 Reality 2925 West Lincoln Avenue, Milwaukee, Wisconsin

42. Throughout the investigation into MCDADE, case agents identified properties used by MCDADE for drug trafficking to be owned by S2 Reality. MCDADE has also made claims to law enforcement to be an employee of S2 Reality.

43. For example, case agents reviewed MPD report from Officer Kevin Vodicka. On September 12, 2024, around 2:00 pm, Officer Vodicka was walking through the front lobby of District Two, when a citizen, later identified as MCDADE waved him over and stated Officer Vodicka knew MCDADE through "Jeanette". Officer Vodicka was familiar with "Jeanette" as a property manager of S2 Reality, located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. Officer Vodicka also recognized MCDADE as working in a maintenance capacity for S2 Reality. MCDADE was expressing his frustration that police were continuing to "board up" a residence he was now occupying after a recent search warrant. MCDADE stated that the property is at 1927 South 6th Street (rear cottage), Milwaukee, Wisconsin and that he was going to "takeover" the lease for his sister-in-law. MCDADE stated that he believed only a small amount of controlled substances had been recovered and that it was just from people "getting high". MCDADE also acknowledged that drug users frequent the address but that he was "going to change things".

44. Further, case agents are aware that on January 16, 2025, United States Marshals Service entered 1966 South 11th Street (Rear Cottage), Milwaukee, Wisconsin looking for a

wanted person. Case agents reviewed the Milwaukee City Assessor Website, which indicated this property is owned by 9330 West Lincoln S2 LLC, which appears to be connected to S2 Reality. Case Agent also observed that the address of 1966 South 11th Street, Milwaukee, Wisconsin was listed on the S2 Real Estate Website (s2realestate.net) as a rental property managed by them during the Fall of 2024. Inside the residence was RINGERSMA and Alberto BOFFIL. During the investigation into MCDADE and his DTO, on September 11, 2024, case agents observed BOFFIL outside a location associated with MCDADE. Case agents reviewed photos of Alberto BOFFIL from Wisconsin Department of Transportation and was able to verify his identity. As the investigation into MCDADE continued, case agents identified BOFFIL as another associate of MCDADE. During the incident, MCDADE came to 1966 South 11th Street (Rear Cottage), Milwaukee, Wisconsin. MCDADE identified himself as the property manager for the residence. MCDADE inquired why law enforcement was present. Inside the residence, while looking for the wanted subjected, law enforcement located two firearms, ammunition, a small amount of cocaine and marijuana.

**E. Surveillance**

45. As part of the investigation into MCDADE and his DTO, case agents conducted surveillance of several location.

**a. S2 Reality**

46. Case agents conducted surveillance of S2 Reality, located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

47. On June 4, 2025, at approximately 12:10 pm, case agents observed a blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AF (Toyota) outside of S2 Reality, located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. Case agents observed that the Toyota was

being driven by RINGERSMA. Case agents also observed an unknown white female white seated in the front passenger seat.

48. During surveillance case agents also observed BOFFIL exit the rear passenger side of the Toyota. BOFFIL (Figure 1) then entered the building vestibule door for S2 Reality, at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. BOFFIL was on the phone.



(Figure 1 - BOFFIL entering the S2 Reality)

49. Case agents observed the Toyota remained in the same position, parked directly east of S2 Reality on the southside of West Lincoln Avenue. Eventually, BOFFIL exited the of S2 Reality building and entered the Toyota. The Toyota then left the area traveling eastbound on West Lincoln Avenue and turned North on South 27th Street.

**b. 1966 South 11th Street (Rear Cottage), Milwaukee, Wisconsin**

50. On June 9, 2025, case agents conducted surveillance of 1966 South 11th Street (Rear Cottage), Milwaukee, Wisconsin, the location were RINGERSMA and BOFFIL were both located when USMS were looking for a wanted subject and MCDADE arrived stating he was the property manager.

51. Case agents observed the Toyota parked directly behind the address, on the parking slab for 1966 South 11th, Milwaukee, Wisconsin, at approximately 8:19 am.

**F. Rental Vehicles**

52. On February 16, 2025, case agents conducted surveillance in the alley behind 1966 South 11th Street, Milwaukee, Wisconsin. Case agents observed a silver minivan (later identified as a Chrysler Pacifica), bearing Minnesota license plate RAX-034 (Pacifica). This license plate listed to a silver 2024 Chrysler Pacifica owned by EAN Holdings, **Enterprise Rent-A-Car Company of Wisconsin, LLC**. Case agents learned from EAN Holding that the renter of the Pacific from February 11, 2025, to March 14, 2025 was RINGERSMA.

53. Case agents reviewed law enforcement database and determined that the Toyota was a rental vehicle also, owned by EAN Holding, **Enterprise Rent-A-Car Company of Wisconsin, LLC.** Case agents determined the Toyota's vehicle identification number was **4T1DAACKXSU503981.** Case agents contacted EAN Holdings. Case agents obtained information from EAN Holding concerning the current renter of the Toyota and determined that the Toyota was rented by Walter RINGERSMA (DOB XX/XX/1965), using telephone number 262-993-1683. EAN Holdings advised that RINGERSMA'S current rental of the Toyota was from May 22, 2025 to June 10, 2025; however, case agents were informed by EAN Holdings that the Toyota was not returned until June 27, 2025.

54. Further, in review of records, EAN Holding reported that RINGERSMA had rented vehicles from May 5, 2025 through May 22, 2025. EAN Holding reported to case agents that during that time period RINGERSMA rented a Mitsubishi Outlander, which at some point was traded in for a Hyundai Elantra.

**G. Prior Court Order**

55. On June 5, 2025, Honorable Magistrate Judge William E. Duffin authorized the electronic surveillance of MCDADE's known cellphone numbers, 414-514-3794 and 414-439-7468 which was served on the service provider. On May 19, 2025, Honorable Magistrate Judge

Nancy Joseph also authorized called detail records for MCDADE's known cellphone numbers, 414-514-3794 and 414-439-7468 which was served on the service provider. . On July 3, 2024, Judge Duffin authorized an extension the electronic surveillance and the call detail records of MCDADE's known cellphone numbers, **414-514-3794** and **414-439-7468** which were served on the service provider. Information obtained from the court authorized the electronic surveillance and call detail records indicated MCDADE, RINGERSMA and others were engaged in drug trafficking.

56. Case agents observed that between May 1, 2025 and June 1, 2025, RINGERSMA's telephone number 262-993-1683 contacted MCDADE's telephone number 414-514-3794, 71 times. Case agents observed that between May 1, 2025 and June 1, 2025, RINGERSMA's telephone number 262-993-1683 contacted MCDADE's telephone number 414-439-7468, 27 times.

**H. Chicago Travel**

57. Case agents monitored court authorized electronic surveillance for MCDADE's telephone number 414-514-3794 and 414-439-7468. Case agents observed between June 6, 2025 and June 14, 2025 414-514-3794 and 414-439-7468 demonstrated that the telephones travelled from Milwaukee, Wisconsin to the Chicago area five times in the span of eight days. Case agents observed telephones 414-514-3794 and 414-439-7468 remained int eh Chicago area for a short period of time during these trips.

58. Case agents observed court authorized electronic surveillance for telephone number 414-514-3794 and 414-439-7468 on June 6, 2025, at approximately 12:14 a.m. appeared to depart near Lake Forest, Illinois. At approximately 12:59 a.m. telephone numbers 414-514-3794 and 414-439-7468 were both in the area of the Englewood Neighborhood near West 63rd

Street and South Carpenter Street, Chicago Illinois. Then telephone numbers 414-514-3794 and 414-439-7468 appeared to head towards Milwaukee, Wisconsin, leaving Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois at approximately 1:29 a.m. on June 6, 2025, arriving in the area of Milwaukee, Wisconsin around 3:00 a.m. Based on the investigation into MCDADE, case agents believe the trip began in Milwaukee, Wisconsin, similar to subsequent trips listed below; however, data from court authorized electronic surveillance does not have information as to telephone numbers 414-514-3794 and 414-439-7468 location prior the departure at 12:14 a.m. from Lake Forest, Illinois.

59. Case agents observed court authorized electronic surveillance for telephone numbers 414-514-3794 and 414-439-7468 on June 8, 2025, at approximately 9:00 p.m. departed the Milwaukee, Wisconsin area. At approximately 11:10 p.m. telephone numbers 414-514-3794 and 414-439-7468 arrived at the area of Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. At approximately 11:40 p.m. both telephone numbers 514-3794 and 414-439-7468 left the area of the Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. Then on June 9, 2025, at approximately 2:00 a.m. telephone numbers 414-514-3794 and 414-439-7468 returned to the Milwaukee, Wisconsin.

60. Case agents observed court authorized electronic surveillance for telephone numbers 414-514-3794 and 414-439-7468 on June 11, 2025 at approximately 2:00 a.m. departed the Milwaukee, Wisconsin area. At approximately 3:35 a.m. telephone numbers 414-514-3794 and 414-439-7468 arrived at the area of Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. At approximately 4:05 a.m. both telephone numbers 514-3794 and 414-439-7468 left the area of the Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. On June 11, 2025 at approximately 6:00 a.m.

telephone number 414-514-3794 and 414-439-7468 returned to the Milwaukee, Wisconsin.

61. Case agents observed court authorized electronic surveillance for telephone numbers 414-514-3794 and 414-439-7468 on June 13, 2025, at approximately 12:42 p.m. departed the Milwaukee, Wisconsin area. At approximately 3:22 p.m. telephone numbers 414-514-3794 and 414-439-7468 arrived at the area of Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. At approximately 5:29 p.m. both telephone numbers 514-3794 and 414-439-7468 left the area of the Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois. Both telephone numbers 414-514-3794 and 414-439-7468 on June 13, 2025 at approximately 9:41 p.m. then returned to the Milwaukee, Wisconsin.

62. Case agents observed court authorized electronic surveillance for telephone numbers 414-514-3794 and 414-439-7468 on June 14, 2025, at approximately 8:13 p.m. departed Milwaukee, Wisconsin. At approximately 9:29 p.m. telephone numbers 514-3794 and 414-439-7468 arrived at area of Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois and at approximately 10:14 p.m. telephone numbers 414-514-3794 and 414-439-7468 leaves the area of Englewood Neighborhood near West 63rd Street and South Carpenter Street, Chicago Illinois and 414-514-3794 and 414-439-7468 returned to the Milwaukee, Wisconsin at approximately 12:18 a.m. on June 15, 2025.

63. Based on training and experience, case agents know that frequent, short trips, like described above, are consistent with drug trafficking. Specifically, consistent with those engaged in picking up larger amounts of controlled substances to distribute. Case agents know that Chicago, Illinois area is a known location for the distribution of larger quantities of illegal substances.

64. Further, case agents have reviewed the movement of both phones associated with MCDADE, telephone numbers 414-514-3794 and 414-439-7468, throughout these trips and all other subsequent movement throughout the past 24 days. During this period of time of court authorized location data being collected case agents observed that both Target Cell Phones appear to not travel apart from each other. Specifically, the Target Cell Phones consistently show locations in close proximity to each other or at the same locations.

**a. Vehicles Travel and Target Cell Phones**

65. Case agents were also able to correlate the times of telephone numbers 414-514-3794 and 414-439-7468 locations to vehicles associated with MCDADE.

66. On June 11, 2025, at approximately 6:10 a.m. case agents conducted surveillance and captured on video a Chevy Trax with Wisconsin license plate AVU-4071 (Trax) parked directly in front of the address of 1425 West Greenfield Avenue, Milwaukee, Wisconsin, the same location MCDADE conducted controlled drug buy with CHS #1 on May 20, 2025. Case agents observed a black male and a white female exit the front of 1425 West Greenfield Avenue, Milwaukee, Wisconsin and enter the Trax. Case agents then reviewed plate readers in the Chicago Illinois area and determined that the Trax was captured by photograph on June 11, 2025 at 3:56 am by plate readers on the Dan Ryan Expressway at 59th Street in Chicago, Illinois. This was also consistent with telephone number 414-514-3794 movement at that time which indicated telephone number 414-514-3794 was in the area of the Dan Ryan Expressway at 63rd Street at 3:50 a.m.

67. Also on June 11, 2025, case agents observed individuals coming and going from the address of 1425 West Greenfield Avenue, Milwaukee, Wisconsin to a black Minivan, bearing Wisconsin license plate AZY-8870 (Minivan). Case agents reviewed Wisconsin DOT records

and determined the registered owner for the Minivan is Max R. Berzowski, DOB XX-XX-1971 with listed address of 572 South National Avenue, # 2, Fond Du Lac, Wisconsin. The Minivan was also observed and captured on video by case agents on May 27, 2025 parked in front of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Case agents observed on May 27, 2025 MCDADE exit 1425 West Greenfield Avenue, Milwaukee, Wisconsin and enter the driver's seat of Minivan as well. Case agents then reviewed plate readers in the Chicago Illinois area and determined that the Minivan was captured by photograph on June 8, 2025 at 11:36 pm by plate readers at the Dan Ryan Expressway at West 59th Street in Chicago, Illinois. This was also consistent with telephone number 414-439-7468 movement at that time, which indicated telephone number 414-439-7468 was in the area of the Dan Ryan Expressway at West 31st Street in Chicago Illinois at 11:40 pm.

68. Based on my training and experience, it appears the DTO is using different vehicles, including rental vehicles, in order to engage in their criminal conduct. Historical location information as to where rental vehicles are being driving will assist case agents in identifying DTO stash locations and possible source of supplies. Further identification of different location will also assist in corroborating the locations of DTO members during relevant events, such as previous controlled buys.

## IV. TECHNICAL BACKGROUND REGARDING VEHICLE TELEMATICS SERVICES AND THE TARGET TELEMATICS ACCOUNT

69. Based on my training and experience, as well as my review of publicly available information, I have learned many rental companies monitor and save GPS data for periods of time. This information was verified during my conversations with Donald W. Lee, Corporate Security and Investigations Manager of the North Central Region of Enterprise Mobility :[2]

[2]The information in this section is further based on information published by "https://autoskyus.com" on its website,

70. Many modern motor vehicles are equipped with sensors, cameras,[3] transmitters, and electronic control units (ECUs)[4] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[5] These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like.

71. Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Infotainment Control Unit and the Telematics Control Unit.

72. A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System ("GPS") navigation, video players, music

---

including, but not limited to, the following document and webpages: "Do Rental Cars Have GPS Trackers? Guide to Track Rental Vehicle," available at "Do Rental Cars Have GPS Trackers? Guide to Track Rental Vehicle"; and "Can Car Rental Companies Track Where You Are? in 2024," available at "Can Car Rental Companies Track Where You Are? in 2024".

[3]As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer. https://www.federalregister.gov/documents/2014/04/07/2014-07469/federal-motor-vehicle-safety-standards-rear-visibility

[4]"ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[5]The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are formally known as event data recorders (EDRs) or crash data recorders. Black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. Most black box recorders are programmed to record information in a continuous loop, writing over information until a vehicle is in a collision. When an accident occurs, the device automatically saves data from immediately before, during, and after the incident. Extracting data after an accident involves using data-retrieval tools that plug into a vehicle's onboard diagnostics port (the "OBD II port"). Unlike a vehicle's telematics system, Black box recorders are not subscription-based and typically do not transfer information over-the-air to manufacturers or to third-party providers.

streaming, voice calling, texting, and traffic data. Additionally, many infotainment systems enable services, such as: hands-free phone calls and talk-to-text functionality with Bluetooth connectivity; music and video streaming; and/or turn-by-turn navigation. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

73. A vehicle's telematics system typically collects and reports diagnostic data from various systems (other ECUs) within the vehicle, including, but not limited to, historical navigation points, speed, and event data. "Historical event data" may include location information, as well as information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

74. The main difference between the infotainment and telematics systems is that the infotainment system is centered around entertainment for the occupants of the vehicle, and the telematics system enables a vehicle to connect with external networks and communications systems. Typical telematics services may include in-car Internet connectivity, remote access (*e.g.*, a manufacturer may offer subscribers remote access application options that allow the subscriber to set climate preferences or lock/unlock doors remotely, etc.), emergency calling, turn-by-turn navigation, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

75. The data generated, collected, and transmitted back to telematics providers can provide valuable information for law enforcement, such as mobile device identifiers, wireless telephone numbers, user account details, call logs, messages, GPS coordinates, and other historical navigation information. For example, historical location data transmitted and retained

by a telematics provider may contain critical evidence regarding the whereabouts of a target of an investigation and/or relevant to attribution of a particular vehicle user.

76. Based on my training and experience, I know that most rental companies equip their vehicles with a is a provider of motor vehicle telematics services. The telematics system provided is normally composed of a number of hardware and software components that support navigation and enable the connectivity of the vehicle. These components include antennas (such as a GPS antenna), wireless technology (such as a Bluetooth antenna for connection to cellphone(s) within the vehicle), a Wi-Fi antenna, and an embedded cellular connection (SIM card) for direct connectivity to cellular networks. These systems provide a variety of services to subscribers to **Enterprise Rent-A-Car Company of Wisconsin, LLC** services, such as navigational assistance and the ability to contact an operator and/or emergency services when assistance is needed.

77. These systems are installed within vehicles during the manufacturing process. After installation, vehicle owners or lessors may pay a fee to **enable these features**, although free trials or free lifetime subscriptions are sometimes offered.

78. Telematics systems, such as the one installed within the vehicle associated with the Target Telematics Account, typically have the ability to determine a vehicle's geographic location and to transmit that location to the telematics company and/or manufacturer, including to facilitate the provision of services offered by the provider. Telematics systems typically use GPS to determine a vehicle's geographic position when the vehicle is in operation. GPS uses a series of satellites orbiting the Earth to determine latitude and longitude with a high level of precision.

79. In addition, an embedded cellular connection allows a vehicle's computers to connect to antennas and other networks outside of the vehicle. This enables, among other things, a telematics provider to remotely collect vehicle performance information, such as diagnostic data that may include location information. Telematics systems store and transmit information when the vehicle is in operation and sometimes when the vehicle is turned off. This storage and transmission occur regularly as part of the system's normal operations.

80. Case agents communicated with the Corporate Security at **Enterprise Rent-A-Car Company** and they confirmed that the blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, **(**the "Target Telematics Account") is equipped with a GPS location system that is able to be stored by **Enterprise Rent-A-Car Company of Wisconsin, LLC**, for a periods of 7 days. Between June 9, 2025 and continuing through June 20, 2025, case agents have requested the historical data for the Target Telematics Account be preserved pending the authorization of a search warrant, which corporate security indicate it would maintain the data for the Target Telematics Account.

81. Consequently, there is probable cause to believe that the Target Telematics Account will contain information that constitutes evidence relevant to this investigation.

## IV. AUTHORIZATION REQUEST

82. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).

83. I further request that the Court direct **Enterprise Rent-A-Car Company of Wisconsin, LLC** to disclose to the government any information described in Attachment B that

is within the possession, custody, or control of **Enterprise Rent-A-Car Company of Wisconsin, LLC**.

## V. CONCLUSION

84. Based on the foregoing, I request that the Court issue the proposed warrant. The government will execute this warrant by serving it on **Enterprise Rent-A-Car Company of Wisconsin, LLC**. Because the warrant will be served on **Enterprise Rent-A-Car Company of Wisconsin, LLC**, which will then compile the requested records at a time convenient to it, good cause exists to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

# <u>ATTACHMENT A</u>
## Property to Be Searched

Information associated with the **Enterprise Rent-A-Car Company of Wisconsin, LLC** account blue 2025 Toyota Camry, bearing Wisconsin Registration 25589AFT and/or vehicle identification number (VIN) 4T1DAACKXSU503981, (the “Target Telematics Account”), that is stored at premises controlled by **Enterprise Rent-A-Car Company of Wisconsin, LLC**, which is headquartered at Enterprise Mobility, 600 Corporate Park Drive, St. Louis, MO 63105.

## ATTACHMENT B
## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of **Enterprise Rent-A-Car Company of Wisconsin, LLC**, regardless of whether such information is located within or outside of the United States, and including any such information that has been deleted but is still available to **Enterprise Rent-A-Car Company of Wisconsin, LLC**, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **Enterprise Rent-A-Car Company of Wisconsin, LLC** is required to disclose the following information to the government for the Target Telematics Account from **May 28, 2025 through June 27, 2025**:

a. All business records or other information, including subscriber information, in any form kept, pertaining to the Target Telematics Account, including the subscriber's full name, date of birth, address, shipping address, date account was opened, length of service, any mobile equipment identifier associated with the account, telephone numbers, and other identifiers associated with the Target Telematics Account;

b. All information in possession of **Enterprise Rent-A-Car Company of Wisconsin, LLC** that might identify the subscriber(s) associated with the Target Telematics Account or persons using the vehicle associated with the Target Telematics Account, including the times and dates such persons used the vehicle;

c. All billing records for the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

d. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), pertaining to the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

e. All records or other information indicating the types of services to which the account holder is subscribed from **May 28, 2025 through June 27, 2025**;

f. All records pertaining to communications (including contents of communications) between **Enterprise Rent-A-Car Company of Wisconsin, LLC** and any persons, regarding the Target Telematics Account, including contacts with support services and records of actions taken;

g. All incoming and outgoing telephone numbers associated with services provided through the Target Telematics Account, from **May 28, 2025 through June 27, 2025;**

h. All historical messages or communications, including voice mail, text, email, and multimedia messages from **May 28, 2025 through June 27, 2025** associated with the Target Telematics Account;

i. All historical location information associated with the Target Telematics Account, from **May 28, 2025 through June 27, 2025**;

j. All turn-by-turn navigation records associated with the Target Telematics Account from **May 28, 2025 through June 27, 2025**; and

k. All voice-to-text messaging logs, including date and time of messages, associated with the Target Telematics Account from **May 28, 2025 through June 27, 2025**;

The Provider is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, contraband, and/or instrumentalities of violations of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances Title 21, United States Code, Sections 841 and 846, (Subject Offenses) have been committed by Russell V. MCDADE (DOB XX/XX/1980), Walter RINGERSMA (DOB XX/XX/1965) and other identified and unidentified subjects since December 2023 to present, including information pertaining to the following matters:

a. Evidence indicating how and when the Target Telematics Account was used, including to determine the chronology of account access and events relating to one or more of the Subject Offenses under investigation;

b. Evidence indicating the geographic location of the vehicle at times relevant to the investigation;

c. Evidence indicating the owner's/subscriber's state of mind as it relates to the Subject Offenses;

d. The identity of the person(s) who created or used the telematics system or services associated with the Target Telematics Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, contraband, and/or instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, United States Department of Homeland Security Investigations may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.